LOFTON *v.* STATE.*

(Division B.    Jan. 31, 1927.    Suggestion of Error Overruled Feb. 28,
1927.)

[111 So. 303.   No. 25923.]

1. INTOXICATING LIQUORS.   *Evidence of manufacture of liquor held for
    jury.*
    Evidence, in prosecution for unlawful manufacture of intoxicating
    liquors, *held* sufficient for jury.

2. INTOXICATING LIQUORS.   *Evidence of officers of operation of still by
    one testifying defendant was interested therein held admissible
    to prove corpus delicti.*
    Where, in prosecution for unlawful manufacture of 'liquor, one
    of persons found operating still by officers testified defendant
    was interested therein, evidence of officers finding still relative
    to its operation *held* admissible to prove *corpus delicti.*

3. CRIMINAL LAW.   *Court's statement in sustaining objection to wife's
    testimony of defendant's whereabouts that she did not know
    where he went held harmless.*
    Where defendant's wife, in undertaking to show *alibi,* testified in
    his behalf to effect that defendant left home, and went over to
    her father's store, but that she did not go with him, court's
    statement in sustaining objection that she "did not know where
    he went" *held* harmless as statement of undisputed facts.

4. INTOXICATING LIQUORS.   *Instruction authorizing conviction, if de-
    fendant was partner in manufacture of liquor, held not mislead-
    ing.*
    Instruction, in prosecution for manufacture of intoxicating liquor,
    authorizing conviction on finding that defendant was partner in

unlawful manufacture, whether he was actually present at still or not, *held* not misleading, since jury would know that court, by use of word "partner," meant to authorize conviction, if defendant was interested in operation of still.

5. CRIMINAL LAW. *Refusal of instruction of alibi held proper under evidence showing alibi was no defense.*

In prosecution for manufacturing intoxicating liquor, refusal of instruction on defense of *alibi* held proper under evidence showing that *alibi* was no defense.

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 833, n. 86 New, 94; p. 977, n. 47; Intoxicating Liquors, 33CJ, p. 758, n. 95; p. 786, n. 52; p. 791, n. 43.

APPEAL from circuit court of Lee county.

HON. C. P. LONG, Judge.

Cliff Lofton was convicted of unlawful manufacture of intoxicating liquors, and he appeals. Affirmed.

*W. A. Blair* and *F. S. Harmon,* for appellant.

I. *The testimony for the state was insufficient to sustain a conviction and the peremptory instruction requested by the appellant was erroneously refused.* Hughes y. State, 96 So. 516 (1923); *Stribling* v. *State,* 86 So. 897 (1921); *Powers* v. *State,* 124 Miss. 423, 86 So. 862; *Rowell* v. *State,* 104 So. 351 (Ala., 1915); *Eugene Williams* v. *State,* 98 So. 107 (1923); *Lem Williams* v. *State,* 98 So. 341 (1923); *Medlin* v. *State,* 108 So. 177.

We are not unmindful of *Bailey* v. *State,* 108 So. 497 (1926), but say with confidence that the Bailey case is readily distinguishable, the theory of the state being that Bailey was an accessory before the fact and aided and abetted in the manufacturing process through employing others to put up the still, cut a road and do other necessary work, and through the actual purchase of sugar and other ingredients which had been brought together to make the mash which the officer seized.

Likewise in *Chandler* v. *State,* 108 So. 723, where the appellant was indicted for manufacturing and convicted

of the attempt to manufacture, the court pointed out that a member of the raiding party saw each one of the people at the still participating in the manufacture and working around the still.

Summing up the decisions of our own court, it is apparent therefore, that mere ownership of a still is not sufficient to sustain a conviction for manufacture; that mere presence at the scene is insufficient, and, likewise, the mere possession of liquor which has been manufactured. In the light of these cases we submit that the evidence here is utterly insufficient since at best it simply goes to show that this appellant was joint-owner of the still and had been there on the day of the raid "just watching."

To be accurate, there is no such thing as ownership in a whiskey still; and, technically speaking, though a man may have a still in his possession, he cannot own it in Mississippi, since it becomes forfeited to the state the instant it is used for an illegal purpose.

II. The court erred in granting instruction No. 1 to the state, to the effect that "If the jury believes from the evidence beyond a reasonable doubt that defendant *Cliff Lofton was a partner in the unlawful manufacture of intoxicating liquor, it makes no difference under the law whether he was actually present at the still when said liquor was being manufactured or not, etc.*"

A partnership is for a lawful purpose and there can be no partnership, legally speaking, to commit a crime; for partnership is founded on contract and a contract to manufacture liquor would be null and void *ab initio.* Had the state proved a conspiracy between Whitt and this appellant, the case would be different, but this record furnishes no such proof.

The crime of *possessing* a still refers to a passive state; the crime of *manufacturing* liquor is shot through and through with positive action and before one can be convicted for manufacturing liquor, the state must prove

beyond a reasonable doubt that he acted affirmatively, either by aiding and abetting those on the job or by assisting them at the still himself.

III. *The testimony of the deputy sheriffs was incompetent and its admission highly prejudicial.* The trial court erred in permitting the two deputy sheriffs to testify for the state without first introducing a line of evidence connecting this appellant with the manufacture of liquor at this still. To our minds this constituted a violation of the fundamental rules of evidence. To say that he went to a still and found A, B and C making liquor, and then in the next breath permit him to testify that he arrested A, B and C on the spot and later arrested D (appellant), and then leave the stand, is to throw overboard the fundamental rule that to be competent, evidence must be material and relevant and must directly connect the defendant with the crime charged.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

I. *The testimony of the deputy sheriffs was competent and admissible.* It is always necessary for the state to prove that a crime has been committed—In other words, to prove *corpus delicti.* It is always permissible for the state to make this proof by witnesses who do not know who committed the crime, and by witnesses who are unable to connect the defendant with the commission of the crime. This testimony established the *corpus delicti* and was competent and admissible for this purpose.

II. *The testimony for the state was sufficient to sustain the verdict of guilty returned by the jury.* When the indictment charges that a person manufactured intoxicating liquor, it is not incumbent upon the state to prove that one person did each and every act necessary to constitute the crime. In fact, there are very few cases in which one and only one person is implicated. The testi-

mony in this case shows conclusively that the appellant was actively engaged in the manufacture of this liquor and that he was guilty as charged in the indictment. *Bailey* v. *State*, 108 So. 497; *Chandler* v. *State*, 108 So. 723.

III. *Instruction No. 1 for the state is not a correct statement of the law.* However, I think it was harmless to the defendant in this case. The testimony shows that the defendant and Whitt were partners in the ownership, in the operation and in the products of the still. It is true that the word "partners" is inaccurate and does not describe the relationship of parties engaged in the violation of the criminal law. However, the facts had been testified to and the jury could not have been misled by the instruction and it is, therefore, harmless error.

ANDERSON, J., delivered the opinion of the court.

Appellant was indicted and convicted in the circuit court of Lee county of a crime of unlawfully manufacturing intoxicating liquors, and sentenced to the penitentiary for three years. From that judgment he prosecutes this appeal.

On the 3d of March, 1926, Carr and Ballard, deputy sheriffs of Lee county, acting on information that a still was being operated on land belonging to Elihugh Estes, went to Estes' pasture, and found the still in operation. They testified that it was being operated by Sylvester Whitt, Jesse Mitchell, and Drucilla Miller. They found that whisky had been manufactured on the still, and was also being manufactured thereon at the time. Whitt, Mitchell, and Miller were arrested, and at the next term of the circuit court of Lee county they were indicted on the charge of manufacturing intoxicating liquors, and plead guilty. The testimony of the officers was that, at the time the still was found, only Whitt, Mitchell, and

Miller were present and engaged in its operation; and their testimony, in connection with the other testimony in the case, showed that appellant was not present at the time, and therefore was taking no part in the operation of the still. Appellant was not arrested until some time after the arrest of Whitt, Mitchell, and Miller. Whitt, after pleading guilty to the charge of manufacturing whisky, was introduced as a witness on behalf of the state, and testified, in substance, that appellant owned the still, and that he and appellant were operating it together, and were partners in the output of the still; that, about half an hour before the officers raided the still, appellant left the still with a jug of whisky and a gun, for the purpose of hiding the whisky; that this whisky had been manufactured on the still; that under their arrangement it was appellant's duty on the day of the raid to watch while the others tended the still; that the mash found at the still belonged to appellant, who had prepared it, and, using the language of the witness, "we were sort of partnership, me and Mr. Lofton."

It is argued on behalf of appellant that the jury should have been directed by the trial court to acquit appellant, because of the absence of any evidence whatever to show that appellant was personally present aiding and abetting in the manufacture of the liquor when the still was raided by the officers and found in operation. Except for the testimony of the witness Whitt that appellant owned the still, and that he and the appellant were operating it, and jointly interested in its output, appellant's position would be well taken. But one may be guilty of the unlawful manufacture of intoxicating liquors without ever having been present personally at the still on which the liquors are manufactured, or taking manual part in its manufacture. He may be guilty through the acts of an agent or a partner, regardless of whether such an agency or partnership would be legal. For illustration, A, gives B, the money to buy a still on which to manufacture intoxicating liquors. They agree that B. shall purchase

the still with A.'s money, locate it and operate it, and sell the whisky manufactured thereon, the proceeds thereof to be divided equally between them. They carry out the agreement. A. has never seen the still. He does not even know where it is located. Nevertheless, under the law, he is guilty of the unlawful manufacture of intoxicating liquors. Appellant argues that under the law there can be no partnership or agency in the unlawful manufacture of intoxicating liquors. That is true. It does not follow, however, that through such an illegal partnership or agency either party thereto can escape punishment on the ground that he had taken no part in the operation of the still. The fact that Whitt, when he testified, had plead guilty to the same character of charge upon which appellant was being tried only went to his credibility as a witness. Taking the whole evidence together, the jury had the right to believe or disbelieve his testimony. They are supposed to have found the truth of the matter. In doing so, they must have believed Whitt's testimony. We think it clear that appellant was not entitled to a directed verdict of acquittal.

The evidence of the officers who found the still to the effect that it was being operated by Whitt, Mitchell, and Miller, and that appellant was not present, was objected to by appellant as having no bearing on his guilt. Their evidence was admitted by the court, and the action of the court in so doing is assigned and argued, on behalf of the appellant, as error. What we have already said is probably sufficient with reference to that contention. We will say further, however, that, in order to make out a case against appellant, it was necessary to prove the *corpus delicti,* as it is in all criminal cases. The *corpus delicti* in this case was the unlawful manufacture of intoxicating liquors. Without the evidence that intoxicating liquors were being manufactured at the time the still was raided, there would have been no case made against the appellant.

The appellant undertook to show his innocence of the charge by proving an *alibi.* He undertook to prove, and it was shown without any conflict in the evidence, that appellant was not present when the officers raided the still and found it in operation. Appellant's wife testified in his behalf. The purpose of her testimony was to prove that appellant was not present at the time the raid was made. Among other things, she stated that her husband, at the time in question, left home and went over to her father's store, but she did not go with him. The district attorney objected to her testimony as to where the appellant went, in view of the fact that she could not have known where he went when he left home. The court sustained the objection. In ruling on the question, the judge said in the presence of the jury: "She did not know where he went." Appellant argues that that language of the court was unauthorized by law, and prejudicial to his case. We think the statement of the court was entirely without harm to the appellant. The court only stated a fact which was undisputed; namely, that the wife of the appellant did not know where her husband had gone.

The appellant complained of the action of the court in giving the following instruction for the state:

"The court charges the jury for the state that, if they believe from the evidence beyond a reasonable doubt that defendant Cliff Lofton was a partner in the unlawful manufacture of intoxicating liquor, it makes no difference under the law whether he was actually present at the still when said liquor was being manufactured or not, provided you believe from the evidence beyond a reasonable doubt intoxicating liquor was being manufactured at the time and place and in the manner and form as charged in the indictment."

Appellant's criticism of the instruction appears to be that the jury were told by such instruction that they should find the appellant guilty if he was a partner in the unlawful manufacture of liquor. Appellant argues

that under the law there can be no partnership in the unlawful manufacture of intoxicating liquors. Conceding that to be true, still we think the instruction is without harm to appellant. It could not have misled the jury. The jury, as reasonable men, knew that the court meant to tell them, by the use of the word "partner," that, if appellant was interested in the operation of the still, he was guilty. It was a matter of indifference whether appellant was interested in the operation of the still as a partner or otherwise, provided he owned an interest in the still, and the still was being operated under an agreement by which he received part of the profits thereof. The common understanding could have put no other interpretation upon this instruction, as we think.

Appellant assigns and argues as error the action of the court in refusing the following instruction requested on his behalf:

"The court instructs the jury for the defendant that the defense of *alibi* is a legitimate defense, and, if from a consideration of the evidence you should have a reasonable doubt as to whether the defendant was at the place or not, or if you have a reasonable doubt as to whether the defendant was at his house or whether he was at the still, he would be entitled to the benefit of that doubt, and you must acquit him on the defense of *alibi*."

Under the evidence in this case an *alibi* was no defense. The fact—and it was an undisputed fact—that, when the officers raided the still, and found it in operation, and appellant was not present at the time, was wholly immaterial. This instruction sought to have the court tell the jury the very converse; that is, if he was not present at the time the still was raided and found in operation, he was entitled to an acquittal. We think it clear that the court committed no error in refusing that instruction.

*Affirmed.*